UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BAKER HUGHES INC., et al, | § | |
| | § | |
| Plaintiffs, | § | |
| vs. | § | CIVIL ACTION NO. 4:11-cv-4021 |
| | § | |
| BNY MELLON CAPITAL MARKETS LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

## I.   INTRODUCTION

Pending before the Court are the defendant's, BNY Mellon Capital Markets, LLC ("BNY Mellon") motion for summary judgment (Dkt. No. 10), the plaintiffs', Baker Hughes, Inc., and Baker Hughes Treasury Services GMBH (collectively "Baker Hughes") response (Dkt. No. 12), BNY Mellon's reply (Dkt. No. 13) and Baker Hughes' surreply (Dkt. No. 14).  After having carefully examined the motion, response, replies, the record and the applicable law, the Court determines that BNY Mellon's motion for summary judgment should be GRANTED.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

BNY Mellon, a securities dealer, purchased hundreds of millions of dollars in auction rate securities from Deutsche Bank in 2007.  Also, in 2007, BNY Mellon, while providing investment-related services to Baker Hughes, sold two series of securities to Baker Hughes, *i.e.,* the Capstan Master Trust Series 2 and the Camber Master Trust Series 10, for the sum of $20,600,000.  The Camber 10 Series was purchased by Baker Hughes for the sum of $10,600,000 and the Capstan 2 Series was purchased by Baker Hughes for the sum of

$10,000,000.   [Baker Hughes purchased $15,000,000 of Deutsch Bank's Camber 8 Series through Credit Services Securities for $15,000,000.]

Baker Hughes contends that it "believed that each of these securities would perform like a short-term investment-grade debt security and would pay a market rate of interest for similar securities."  Hence, Baker Hughes asserts that it was not aware that the "securities consisted partially of complicated credit default swaps in favor of Deutsche Bank," "the collateral protected Deutsche Bank, not Baker Hughes," and that "a 9% loss in the reference portfolio would result in a 100% loss of Baker Hughes' investment."  In November of 2009, Deutsche Bank made an offer to buy back the Camber 10 and Capstan 2 securities from Baker Hughes and Baker Hughes accepted the offer.  Between the two Series, Baker Hughes had loss totals of $11.26 million.

### B.    Procedural Background

On December 18, 2008 and February 24, 2009, Baker Hughes and BNY Mellon, respectively, filed Uniform Submission Agreements agreeing to arbitrate their disputes before the Financial Regulatory Authority ("FINRA").  Baker Hughes described its dispute with BNY Mellon as causes of action for:  (a) breach of fiduciary duty; (b) promissory estoppel; (c) violation of the New York Common Law (fraud); (d) violation of Texas' Blue Sky Laws; and (e) violation of the Securities Exchange Act of 1934 and Rules 10b-5.  On or about August 1, 2011, the FINRA Arbitration Panel entered its award, dismissing with prejudice each of Baker Hughes' claims against BNY Mellon.  In addition, it denied with prejudice any relief "not specifically enumerated, including punitive damages and attorneys' fees."  Shortly, thereafter, on August 11, 2011, Baker Hughes filed suit in state court against Deutsche Bank and BNY Mellon alleging securities Act violations and claims for fraud, manipulation of the Market and negligence for

violating a duty owed to Baker Hughes under FINRA and the National Association of Securities Dealers ("NASD").

The NASD Notice to Members 03-71 ("Non-Conventional Investments" (2003) provides, in relevant part, as follows:

> (1) conduct adequate due diligence to understand the features of the product; (2) perform a reasonable-basis suitability analysis; (3) perform customer-specific suitability analysis in connection with any recommended transactions; (4) provide a balanced disclosure of both the risks and rewards associated with the particular product; (5) implement appropriate internal controls; and (6) train registered persons regarding the features, risks, and suitability of these products.

Earlier and in addition to the NASD notice, Baker Hughes, in its Statement of Claim filed before the FINRA Panel, pointed to the MSRB Rules to Transaction's notice that informs on the duty owed by brokers and dealers.  It states, in relevant part,:

> The duty to disclose material facts to a customer in an Auction Rate Securities transaction includes the duty to give a complete description of the security, including features of the auction process that likely would be considered significant by a reasonable investor.

On August 12, 2011, BNY Mellon brought its suit against Baker Hughes to confirm an arbitration award.  *See BNY Mellon Capital Markets, LLC v. Baker Hughes, Inc., et. al.* (Civil Action No. H-11-2979).  On November 15, the Court entered its Order confirming that award. The next day, Baker Hughes filed its Original Petition in the 113th Judicial District Court of Harris County, Texas.  It is these claims that are the subject of this suit.

III.     **CONTENTIONS OF THE PARTIES**

A.       **BNY Mellon's Contentions**

BNY Mellon characterized Baker Hughes' suit as raising claims that are barred on one of two grounds: (a) *res judicata*; or (b) the two-year statute of limitations.  BNY Mellon points out that the arbitration proceeding adjudicated all of Baker Hughes' claims; hence, Baker Hughes' negligence claims are barred by *res judicata*.  BNY Mellon points out that each of the four *res judicata* elements are proved in the case at bar.  The first three elements, identical parties or privity, a judgment rendered by a court of competent jurisdiction, and an action concluded on the merits, are not contradicted by the facts.  *See Test Masters Educ. Svcs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).  The fourth element, same claim or cause of action, is governed by the "transaction test."  *Id.*  Thus, BNY Mellon argues, the issue is whether the two causes of action are based on the "same nucleus of operative facts."  *Ibid*.  BNY Mellon, pointing to the pleadings in this case and the statement of claims filed in the arbitration proceeding, asserts that both relate to advice given by BNY Mellon to Baker Hughes concerning the same securities transactions.

Regarding the statute of limitations defense asserted by BNY Mellon, it argues that Baker Hughes' cause of action based on negligence accrued in March and August of 2007, when the advice was given and the transactions were consummated.  BNY Mellon argues that the tolling of the statute of limitations cannot save the negligence claims.  And, equally important, the arbitration proceeding would not have tolled the statute of limitations, citing to *Fonseca v. USG Ins. Svcs., Inc.,* No. 11-11063, 2012 WL 1255025 (5th Cir. April 13, 2012) (per curiam) (addressing the issue of whether a claim presented to arbitration tolls the statute of limitations.)  Therefore, BNY Mellon argues that Baker Hughes has no ground to stand on.

### B.    Baker Hughes' Contentions

Responding to BNY Mellon's *res judicata* contention, Baker Hughes asserts that the doctrine applies only to claims that the parties contracted to arbitrate.  Baker Hughes' negligence claim was not within the scope of the parties' arbitration agreement, and importantly, BNY Mellon refused to expand the scope of the arbitration when Baker Hughes sought to add the claim(s).  Therefore, the doctrine of *res judicata* does not apply to Baker Hughes' negligence claim.

In addition to its arbitration agreement defense, Baker Hughes points out that this is a diversity of citizenship case, therefore state law applies, citing to *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508 (2001).  Under Texas law, Baker Hughes argues, "federal *res judicata* analysis is applied to determine the preclusive effect of a prior federal court judgment." Hence, since the parties' arbitration award proceeding was brought in federal court, federal law applies to the analysis.  In summary, Baker Hughes contends that:  (a) the claim could not have been brought in the arbitration proceeding; (b) the claim was not included as required by contract; and (c) BNY Mellon's reliance on *Jamison v. Drive Time Sales & Fin. Corp.,* No. 07-10463, 2008 WL 104297 (5th Cir. Jan. 8, 2008), an unpublished opinion, is misplaced.

Addressing BNY Mellon's statute of limitations claim, Baker Hughes presents three grounds for the arrest of time.  First, Baker Hughes asserts that the parties contractually agreed to toll the limitations period.  In this regard, it argues that a fair interpretation of the contract reveals the parties' intentions to waive the limitations period.  Next, Baker Hughes asserts that the negligence claim was disposed of by the arbitrators when they ruled that they lacked jurisdiction of the claim.  Here, Baker Hughes points to the Panel's Order dated June 30, 2011, denying Baker Hughes' motion to amend its Statement of Claims.

Finally, Baker Hughes turns to the doctrine of "equitable tolling as a basis for arresting the statute of limitations." Here, reasonable diligence is the password. Baker Hughes argues that the reasonable diligence inquiry is a fact intensive inquiry and that the true facts alone defeat summary judgment. Moreover, Baker Hughes proffers that it used reasonable diligence in pursuing its claim and that extraordinary circumstances prevented it from filing its claim in court. Therefore, Baker Hughes argues, summary judgment is inappropriate and should be denied.

In its reply to Baker Hughes' contentions, BNY Mellon disputes Baker Hughes' interpretation of FINRA rules. If Baker Hughes had desired to arbitrate its negligence claim, the rules would have permitted it. *See* FINRA 12200. Simply, argues BNY Mellon, Baker Hughes failed to timely assert its negligence claim(s). To this reply, Baker Hughes responds, judicial estoppel should bar BNY Mellon's "contradictory positions." Here, Baker Hughes argues that BNY Mellon should not be permitted to successfully argue against its efforts to amend its Statement of Claim and later take the legal position that *res judicata* and/or the statute of limitations bars a suit based on that claim(s).

Further, Baker Hughes contends that BNY Mellon misapplies FINRA Rule 122000. It argues, Rule 122000 applies when the parties have an arbitration agreement in place 'prior to' the controversy at issue, while Rule 12201 applies when the parties execute an arbitration agreement. The Court will address the two salient issues that dispose of Baker Hughes' claim(s).

IV.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.* at 248.  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted.  *Id.* at 249-50; *see also Shields v. Twiss*, 389 F.3d 142, 149-50 (5th Cir. 2004).

Under Rule 56(c) of the Federal Rules of Civil Procedure, the moving party bears the initial burden of "informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 - 87 (1986); *Adams v. Travelers Indem. Co. of Connecticut,* 465 F.3d 156, 163 (5th Cir. 2006).  Where the moving party has met its Rule 56(c) burden, the nonmovant must come forward with "specific facts showing that there is a *genuine issue for trial."  Matsushita*, 475 U.S. at 586-87 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); and *Adams*, 465 F.3d at 164.  To sustain the burden, the nonmoving party must produce evidence admissible at trial showing that reasonable minds could differ regarding a genuine issue of material fact. *Anderson*, 477 U.S. at 250-51; 255; *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998).  In deciding a summary judgment motion, "[t]he evidence of the nonmovant

is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

## V.      DISCUSSION AND ANALYSIS

From BNY Mellon's perspective, Baker Hughes' claim of negligence in this suit is barred by either the doctrine of *res judicata* and/or the two-year statute of limitations.  To avoid this result, Baker Hughes contends that its negligence claim was not within the scope of the parties' Arbitration Agreement and the parties had agreed to a tolling of the limitations period.  As well, and according to Baker Hughes, the Arbitrators refused to accept its amendment request because BNY Mellon opposed the amendment and it lacked jurisdiction.

The Court is of the opinion that these contentions fail as a matter of law.  It is true that the parties agreed to submit their dispute to arbitration.  However, the Agreement does not state that the parties agreed to a limitation tolling except, perhaps, as to the claims submitted.  Nor was there an agreement to limit the type of claims submitted.  Hence, there is no evidence that the parties agreed to toll limitations concerning claims not submitted.

In addressing the issue of the parties' intent, the Court looks to the four corners of the Agreement to determine the bounds of the actual agreement.  *See Concord Oil Co. v. Pennzoil Exploration and Prod. Co.*, 966 S.W.2d 451 (Tex. 1998); *see also Mobil Exploration and Producing U.S., Inc. v. Dover Energy Exploration LLC*, 56 S.W.3d 772, 776 (Tex. App. - Houston [14th Dist.] 2001).  A careful review of the Arbitration Agreement reveals that the parties did not agree to a limitation toll on Baker Hughes' negligence claim.  Nor did they agree to limit the claims submitted.

The factual history shows that Baker Hughes' claim of negligence arose in March and August of 2007, when BNY Mellon sold the two Series of securities to Baker Hughes.  Baker

Hughes' pleadings are telling as they concern when it knew or should have known about any other claim(s).  In its pleadings, Baker Hughes pleads that in "August, 2007, Deutsche Bank abruptly abandoned its historic practice of submitting bids for the entirety of the auctions for which it served as the sole or lead broker-dealer . . . When Deutsche Bank decided that it would no longer place support bids as it had done in the past, reality intervened and the 'market' . . . collapsed altogether."

Baker Hughes admits that it learned at that time that a fraudulent market had been created.  Therefore, Baker Hughes knew or should have known and/or suspected complicity on the part of BNY Mellon, its securities dealer.  *See Jamison*, 2008WL 104297, at *1.  At the least, an investigation of the circumstances was called for.  The Court concludes that the two-year statute of limitations was not tolled by the Agreement and that Baker Hughes' negligence claim was barred before it filed its suit in August of 2011.

Baker Hughes argues further that the doctrine of "equitable tolling" should apply and save its negligence claim in light of BNY Mellon's objection to its attempt to amend its Statement of Claims.  It further contends that BNY Mellon's position coupled with the adverse ruling by the Arbitration Panel results in an inequity.  The Court is of the view, however, that equitable tolling does not aid Baker Hughes' position.  There is no evidence that BNY Mellon actively misled Baker Hughes or, in some respect, prevented Baker Hughes from asserting its claim in a court of law while simultaneously proceeding with arbitration.  *See United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000).  Hence, a demand or agreement to arbitrate claims does not *ipso facto* toll a statute of limitations.  *See Fonseca*, 2012 WL 1255025, at *1.  Absent inequitable conduct on the part of BNY Mellon, the Court is loathed to exercise its discretion and, therefore, will not.

Baker Hughes' position is not improved in the face of BNY Mellon's defense, that *res judicata* bars Baker Hughes' suit. The pleadings and evidence show that Baker Hughes' claim of negligence arises out of the same nucleus of operative facts as the claims submitted to arbitration. *See Test Masters Educ. Serv. Ins. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005). *See also Jamison*, 2008WL 104297, at *1. Therefore, the Court determines that the doctrine of *res judicata* bars Baker Hughes' suit.

## VI.  CONCLUSION

Based on the foregoing discussion and analysis, the Court concludes that there is no disputed fact or material issue for which a jury is required and, therefore, BNY Mellon's motion for summary judgment should be granted.

It is so Ordered.

SIGNED at Houston, Texas this 14th day of November, 2012.

_____
Kenneth M. Hoyt
United States District Judge